2023 IL App (1st) 220634-U

SECOND DIVISION
DECEMBER 26, 2023

No. 1-22-0634

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| MARGARET ANN MCNAMARA, individually and as personal representative of the Estate of Donald McNamara, Deceased, CARRIE MCNAMARA, CRISTY MCNAMARA, and CEANN MCNAMARA, | ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | |
| | ) | No. 14 L 819 |
| ICO POLYMERS NORTH AMERICA, INC., individually and as successor in interest to Wedco Technology, Inc., individually and as successor in interest to Wedco Inc., ICO POLYMERS, INC., individually and as successor in interest to Wedco Technology, Inc., individually and as successor in interest to Wedco, Inc., | ) ) ) ) ) ) ) | |
| | ) | Honorable John P. Kirby, |
| Defendants-Appellees. | ) | Judge Presiding. |

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Ellis concurred in the judgment.

ORDER

¶ 1    *Held*: We affirm in part, reverse in part, and remand for a new trial. The trial court abused its discretion when it ruled that an elderly witness was required to testify in person at trial when five other witnesses in the case testified remotely via Zoom. The trial court did not abuse its discretion when it excluded an evidence

deposition given by the decedent before his death, where no notice of the deposition was given to defendants.

¶ 2       This appeal concerns whether the trial court abused its discretion when it ruled that a particular trial witness would only be allowed to testify if the witness appeared in person at trial. The witness's proffered testimony was that he personally ground material potentially containing asbestos at the plant where plaintiffs' decedent worked decades earlier. Inhalation of asbestos is the only known cause of mesothelioma, and the decedent died of mesothelioma. Five other witnesses in the case testified remotely via Zoom, but the trial court barred one particular witness from testifying by remote means. Based on the circumstances, we find that the trial court's ruling on this point was arbitrary such that it constituted an abuse of discretion. The trial court also excluded an evidence deposition that the decedent gave shortly before his death from being offered into evidence. We find that the trial court did not abuse its discretion in excluding the decedent's evidence deposition because defendants were not present at the deposition and the parties who were present did not have similar motives to cross-examine the decedent. Accordingly, we affirm in part, reverse in part, and remand for a new trial.

¶ 3                                    BACKGROUND

¶ 4       Plaintiff Margaret Ann McNamara filed this case seeking recovery on her own behalf and on behalf of the estate of her late husband, Donald McNamara (McNamara). The McNamara's three children, Carrie, Cristy, and CeAnn are also named plaintiffs. The plaintiffs are seeking damages for the death of Donald McNamara. McNamara was diagnosed with mesothelioma in January 2012, and he died six months later.

¶ 5       Until shortly before his mesothelioma diagnosis, McNamara was in good health for a man of his age. The only known cause of mesothelioma is the inhalation of asbestos. Thus, McNamara's mesothelioma diagnosis established that he had been exposed to asbestos at some

point in his life. Plaintiffs believe McNamara was exposed to asbestos when he worked as a truck driver and picked up deliveries from the defendants, who operated a plastics grinding facility in Elk Grove, Illinois. At the time, the company was Wedco, Inc (Wedco). but later became ICO Polymers. McNamara visited the Wedco grinding facility several times in 1973 where he would pick up large cardboard boxes filled with plastic powders and transport them back to his employer in Iowa.

¶ 6     Evidence exchanged in discovery and presented at trial showed that Wedco opened a grinding facility in Elk Grove, Illinois in 1972. McNamara spent six months in 1973 as a truck driver picking up plastic powders from Wedco. There was conflicting evidence about how frequently McNamara visited the Wedco facility. McNamara himself said before his death that he traveled to Wedco weekly for a six-month period. McNamara's wife also testified that he made the trip weekly. McNamara's former boss, however, testified that McNamara only made the trip five times total. When McNamara would go to the Wedco facility in Elk Grove, he stated that he would normally spend up to four hours there. McNamara's former boss, however, stated that McNamara would only spend 30 to 45 minutes there while the material was loaded onto the truck. McNamara claimed he would walk around the facility and just kind of kill time during those hours; while his boss claimed McNamara would just stay in the loading area and would never have gone into the production area. Plaintiffs allege McNamara was exposed to asbestos during his trips to the Wedco facility in 1973, and he was diagnosed with mesothelioma in 2012. Interestingly, the average latency period between the time of the asbestos exposure and the diagnosis of mesothelioma is 40 years.

¶ 7     Wedco had plastic grinding facilities in New Jersey, Tennessee, California, and Illinois. Its original facility was in New Jersey with the others being opened later to provide services in a

geographically diverse manner close to their customers. It was established through discovery and during trial that the facility in New Jersey indeed ground plastics containing asbestos. One of the pivotal questions of fact in this case was whether Wedco ground asbestos-containing products at its facility in Elk Grove.

¶ 8 Wedco's service model was to receive shipments of plastic from the major chemical companies, grind the plastic into powder, and then ship the plastic powder to businesses that would mold the raw plastic into finished plastic products. Some of Wedco's customers were companies like Union Carbide, Dow Chemical, Exxon Chemical, E.I. DuPont, Air Products, and Micro Powders. Former employees of Wedco testified that they were originally employed by Asbestos Corporation of America, but at some point, they became employees of Wedco.

¶ 9 Nationally, Wedco was grinding huge amounts of plastic, and the facility in Elk Grove ground 10 million pounds of plastic in its first six months of operation after opening. Wedco's Elk Grove facility ground those 10 million pounds of plastic with just seven employees. A former vice president of Wedco, who started as a machine operator, Fred Feder, testified that he was aware Wedco processed certain polymers containing asbestos in New Jersey, specifically "polypropylene, which was compounded with asbestos and pelletized." Feder testified that he was, "of course," exposed to asbestos himself because he "was working in a plant which handled asbestos." He also testified that Wedco even ground "raw asbestos" at its New Jersey facility. However, no one was present at trial who could specifically testify whether materials containing asbestos were processed at Wedco's Elk Grove facility as, apparently, all the employees from the Elk Grove facility were deceased by the time of trial. A former Wedco employee, Leo Sinclair, was perhaps the witness who could testify about asbestos being used in some capacity by Wedco in Elk Grove.

¶ 10    Leo Sinclair is a former Wedco employee. He principally worked as a grinding machine operator at Wedco's facilities in New Jersey, but when Wedco was launching the plant in Elk Grove, Sinclair went to help get the new facility up and running. In Elk Grove, Sinclair mostly helped to set up the machines, but if no one else was around, he would operate the grinding machine. Sinclair stayed at the Elk Grove facility for six to nine months and then returned to New Jersey. He would have been present at the facility at or around the time McNamara was going there to pick up ground plastic. Apparently, Sinclair was the only living witness who had worked at Wedco's Elk Grove facility.

¶ 11    Sinclair sat for an evidence deposition in this case in January 2018. Just before trial, at the trial court's behest, plaintiffs' counsel contacted Sinclair to see if he could testify live at the trial rather than through his evidence deposition. Plaintiffs' counsel spoke with Sinclair in November 2021 and asked him some questions that she contends were not addressed at Sinclair's deposition almost four years earlier. Sinclair reportedly confirmed to plaintiffs' counsel that he had performed grinding work for the same customers in Elk Grove as in New Jersey: Union Carbide, Dow, among others. Sinclair also reportedly informed plaintiffs' counsel that he personally ground Bakelite at Wedco's Elk Grove facility. Bakelite is a Union Carbide product that is well known to have sometimes contained asbestos. Plaintiffs' counsel disclosed this straightforward answer from Sinclair to opposing counsel and to the court at a court appearance on November 24, 2021. Opening statements in the case were scheduled for November 29, 2021. Although plaintiffs' counsel disclosed the information obtained from Sinclair promptly upon receiving it, it was nonetheless disclosed just five days before the trial was set to begin.

¶ 12    Several of the trial witnesses were set to testify remotely via Zoom at the trial, including Sinclair. At the same court appearance where plaintiffs' counsel revealed the content of her

conversation with Sinclair, she first indicated that Sinclair was "going to testify remotely." Then, plaintiffs' counsel seemed to possibly indicate that Sinclair would be testifying in person at trial.

"THE COURT: So, now I['ve] got to ask you a question. Are you putting him on the stand?

MS. FARRISE BEST: Yes."

Defendants objected to any new information coming in through Sinclair and moved to preclude Sinclair from testifying entirely, as they had done previously in the case for a different reason. The defense further sought to entirely preclude plaintiffs from introducing Sinclair's videotaped evidence deposition at trial.

¶ 13    In addressing defendants' motion to preclude Sinclair from testifying, the trial court recounted that, although Sinclair was previously set to testify remotely, plaintiffs "informed the parties and the court on November 24, 2021, that Leo Sinclair would be testifying live at trial." The trial court expressed that it needed to consider the new disclosure in light of its effect on the discovery process. The court also explained it was ruling on defendants' motion in a manner consistent with its responsibility to ensure that all parties have a fair trial. The trial court denied both defendants' request to preclude Sinclair from testifying and their request to disallow his evidence deposition at trial. The trial court, however, conditioned its allowing of the newly discovered information.

"The Court will allow Leo Sinclair's deposition under the following conditions: Mr. Sinclair will appear here, live, for testimony. Prior to his testimony, Defense will be allowed one hour to depose Mr. Sinclair as a discovery deposition to address the issues of the contents and circumstances of the statement given by Mr. Sinclair to counsel."

Defendants did not request for Sinclair to be precluded from testifying via Zoom, nor did they ask that Sinclair be required to appear in person because of plaintiffs finding out new information from Sinclair shortly before trial.

¶ 14    Sinclair subsequently filed a declaration with the court explaining the circumstances that prevented him from testifying in person at trial. He explained that he was 79 years old and currently in the middle of a four-part medical treatment to combat severe arthritis in his knee. Sinclair averred that he could not endure travel from New Jersey to Chicago because it would be too physically painful and difficult. He further averred that he was approaching his 80th birthday and, as a result, did not feel comfortable traveling in the midst of a global pandemic, especially as the Omicron variant of Covid-19 was circulating. Finally, Sinclair declared that he was fully available and willing to testify remotely via Zoom or another remote video technology regarding his work at Wedco.

¶ 15    On November 30, 2021, plaintiffs presented Sinclair's declaration to the trial court in a final effort to procure Sinclair's testimony at trial. Plaintiffs acknowledged on November 30th that the trial court had ruled Sinclair could only testify if he appeared "physically in person in the court," with the added requirement that defendants would be entitled to depose Sinclair for up to one hour regarding the recently revealed information he provided to plaintiffs' counsel. Plaintiffs however stressed that Sinclair could not make the trip to Chicago based on his age, physical condition, and fears regarding Covid-19, but that he was ready and willing to testify via Zoom. Plaintiffs argued that defendants would not be prejudiced by Sinclair testifying via Zoom. Plaintiffs also tried to make an offer of proof regarding what Sinclair's testimony would be, but the trial court rejected the offer of proof. The trial court explained that no offer of proof was necessary because the court was not excluding Sinclair as a witness, it was only requiring him to

appear in person. Plaintiffs explained that the court's ruling was effectively an exclusion of Sinclair as a witness because he was incapable of making the trip to Chicago.

¶ 16    Defendants argued that plaintiffs were not prejudiced because they could use Sinclair's evidence deposition at trial.

¶ 17    The case was tried before a jury. Numerous witnesses testified at trial with several witnesses testifying live in court and five witnesses testifying remotely via Zoom. During the trial, defendants stressed on multiple occasions that plaintiffs failed to produce any evidence that asbestos-containing plastics were ground at Wedco's Elk Grove facility. During the jury's deliberations, they asked for Sinclair's evidence deposition to be replayed. After deliberations, the jury returned a verdict in defendants' favor. Plaintiffs filed a motion for a new trial where they reiterated that Sinclair should have been permitted to testify via Zoom, among other arguments. The trial court denied plaintiffs' motion for a new trial, and plaintiffs now appeal.

¶ 18                                    ANALYSIS

¶ 19            Witness Leo Sinclair's Request to Testify at Trial Via Zoom

¶ 20    Plaintiffs' primary contention on appeal is that the trial court erred when it required Leo Sinclair to appear in person in order to be permitted to give testimony at trial when the court allowed five other witnesses to testify remotely via Zoom. Sinclair could not appear at the trial in person, so plaintiffs had to proceed to trial without his testimony. At trial, defendants highlighted plaintiffs' lack of evidence on the issue of causation, and plaintiffs contend that Sinclair's testimony was crucial in that respect. Plaintiffs ask us to reverse the judgment and remand the case for a new trial.

¶ 21    As far as the issue presented and the standard of review are concerned, the parties do not compellingly frame the issue presented on appeal. Plaintiffs characterize the issue as an

evidentiary ruling or a ruling on the exclusion of evidence. Defendants characterize the issues as the review of the denial of the motion for a new trial or a ruling on the admission or exclusion of evidence. The parties agree, however, that we are reviewing the trial court's action for an abuse of discretion. It is difficult to put the issue presented neatly into one of the categories of issues typically presented on appeal. The question is ultimately whether the trial court abused its discretion when it ruled that Sinclair was required to testify live in open court in order to provide evidence in this case, even when other witnesses testified via Zoom and Sinclair averred that his presence was a physical impossibility. The ruling in question is more akin to a trial court denying a case participant's request to appear remotely under Illinois Supreme Court Rule 241. Whether our review is of the exclusion of evidence, of a decision to exclude a witness, or of a ruling concerning the use of remote hearings under our Supreme Court Rules, we agree that the standard of review is the abuse of discretion standard. See *Israel ex rel. Dundee-Landwehr Ltd. Partnership v. National Can. Corp.*, 276 Ill. App. 3d 454, 463 (1995) (evidentiary rulings are a matter within the discretion of the trial court and such rulings will not be reversed absent an abuse of discretion); *Magna Trust Co. v. Illinois Central R.R. Co.,* 313 Ill. App. 3d 375, 393 (2000) (whether to allow or bar the testimony of a witness is a matter committed to the discretion of the circuit court); Ill. S. Ct. R. 241 Committee Comment (Rev. Feb. 2, 2023) ("A court has broad discretion to determine if video participation, including giving video testimony, and nontestimonial telephone participation are appropriate for a particular case."); see also Ill. S. Ct. R. 45(b)(1) (West 2020) (eff. May 22, 2020). "A trial court abuses its discretion when it makes an arbitrary decision or fails to use 'conscientious judgment' in reaching its ultimate determination." *Madalinski v. St. Alexius Med. Ctr.*, 369 Ill. App. 3d 547, 557 (2006).

¶ 22    Plaintiffs argue that the trial court erred when it ruled that Sinclair was required to appear in person, on the witness stand, in order to give testimony in this case. Until just before trial, Sinclair was expected to testify remotely via Zoom, and there was no objection to Sinclair's participation in that manner. Plaintiffs' counsel contacted Sinclair in the lead up to the trial and asked him a few questions that were more pointed than the questions Sinclair had been asked at his deposition. Plaintiffs' counsel learned through Sinclair's responses that Sinclair had more valuable testimony than was previously known. When plaintiffs' counsel presented the revelation to the trial court, defendants expectedly objected. Defendants sought to have Sinclair barred as a witness altogether and to prevent his evidence deposition from being entered into evidence at trial. The trial court denied defendants' motion on both points.

¶ 23    However, when the trial court denied defendants' motion to bar Sinclair as a witness, the court attached two conditions to Sinclair testifying at trial. In order for Sinclair to testify at trial, the trial court required Sinclair to appear in person at trial and to sit for a brief deposition with defendants' counsel so they could learn about the newly disclosed testimony that Sinclair was reportedly ready to offer. On their face, the conditions placed on Sinclair offering testimony in this case were not unreasonable and they appear to be a fair and equitable way to deal with Sinclair's belated disclosure. In practice, however, under the circumstances presented here, the conditions placed on Sinclair offering testimony became unreasonable and amounted to an arbitrary ruling that affected plaintiffs' right to a fair trial.

¶ 24    The trial court expressly stated it was not sanctioning plaintiffs for discovering the information at the time that they did. The trial court further denied defendants' motion to bar Sinclair as a witness. The trial court had already previously denied defendants' motion to exclude Sinclair's testimony wherein defendants argued that Sinclair's testimony was irrelevant.

However, the trial court conditioned Sinclair giving testimony on Sinclair's physical presence in the courtroom in Chicago. It is unclear what could have been accomplished in the courtroom with regard to Sinclair that could not have been accomplished if he appeared via Zoom. Testimony on Zoom was sufficient for five other witnesses in the case to present their testimony and to be challenged on cross-examination. Sinclair similarly could have been deposed on Zoom by defendants' counsel to meet the trial court's other requirement for his testimony. If it was not a sanction, the purpose of requiring Sinclair to appear in person is totally unclear. Sinclair was previously scheduled to testify in the case via Zoom until plaintiffs' counsel asked him a few questions over the phone. Once counsel disclosed those answers to the court, Sinclair was no longer permitted to testify remotely.

¶ 25    The parties both acknowledge the importance of Sinclair's expected testimony. The trial court even expressly relied on Sinclair's testimony, given in his evidence deposition, to deny defendants' motion for a directed verdict during trial on the issue of causation. Defendants repeatedly stressed at trial that the jury should find in their favor because plaintiffs had not presented any evidence that Wedco ground any asbestos at its Elk Grove facility. Sinclair was apparently ready to testify that Wedco did, in fact, grind asbestos at its Elk Grove facility or at least that there was a likelihood that it did so. Plaintiffs were already at a significant disadvantage in the case since everyone else who had worked at Wedco's Elk Grove facility was already dead at the time of trial. Thirty-nine years elapsed between McNamara's presence at Wedco's facility and his development of mesothelioma. Much of the direct evidence of Wedco's activities in Elk Grove had apparently been lost or destroyed. Sinclair's testimony was plaintiffs' best and perhaps only opportunity to directly tie Wedco's Elk Grove facility to the processing and use of asbestos.

¶ 26     Sinclair provided valid reasons for being unable to be present in Chicago. At least upon receiving Sinclair's declaration, the trial court should have reconsidered its decision to require Sinclair's presence at trial.

¶ 27     Illinois Supreme Court Rules 45 and 241 address the issues of remote hearings and remote appearances. Rule 45 was enacted in May 2020 shortly after the outbreak of Covid-19 across the United States. Ill. S. Ct. R. 45, Committee Comments (Rev. Feb. 2, 2023) (discussing the history of Rule 45). The Illinois Supreme Court adopted Rule 45 in recognition of the fact that telephone and video conference appearances can be used effectively and appropriately for both civil and criminal cases. *Id*. At the time the Rule was adopted (and at the time of the trial in this case), "the use of remote participation was subject to the discretion of the court and [] the court had wide latitude to allow remote appearances without a showing of good cause or any particular level of hardship." *Id*. The Committee Comments emphasized that remote appearances should be easy to request and liberally allowed. *Id*. The original Rule incorporated some of the concepts and definitions in Supreme Court Rule 241 which was adopted in 2011, long before the Covid-19 pandemic.

¶ 28     Supreme Court Rule 241 expressly applies to "remote hearings in civil trials." The current Committee Comments to Rule 241 reflect an evolving approach and an increasing level of approval for the use of video conference technology in the courts of our State, with strong support for the use of video conferencing technology when it is beneficial to the administration of justice. See Ill. S. Ct. R. 241, Committee Comments (Rev. Feb. 2, 2023). The Committee Comments to Rule 241 that were published at the same time Rule 45 was adopted in May 2020 (and were in place at the time the trial in this case was held) still strongly supported the use of video conference technology in civil proceedings.

"The use of video technology to conduct testimony under oath in civil trials increases accessibility to the courts, aids in the efficient administration of justice, avoids delays in trials, and more efficiently administers testimony for case participants who face an obstacle to appearing personally in court such as illness, disability, or distance from the courthouse." Ill. S. Ct. R 241, Committee Comments (West 2020) (eff. May 22, 2020).

¶ 29    Under the Rules addressing remote hearings and remote appearances, as they were at the time of the trial in this case, a participant was required to show good cause for offering testimony in a trial or an evidentiary hearing via remote video conferencing. Ill. S. Ct. 241 (West 2020) (eff. May 22, 2020). "Good cause is likely to arise when a witness is unable to attend trial for unexpected reasons, such as accident, illness, or limited court operations, but also in foreseeable circumstances such as residing out of state." Ill. S. Ct. 241, Committee Comments (West 2020) (eff. May 22, 2020). The Rules Committee expanded the circumstances that might constitute good cause when it revised its Committee Comments in 2023. See Ill. S. Ct. R. 241, Committee Comments (Rev. Feb. 2, 2023).

¶ 30    Under Rule 241, as it was understood at the time of trial in this case, the trial court was vested with "broad discretion to determine if video testimony is appropriate for a particular case." Ill. S. Ct. 241, Committee Comments (West 2020) (eff. May 22, 2020). The Committee explained that "[a] court should take into consideration and balance any due process concerns, the ability to question witnesses, hardships that would prevent the case participant from appearing in person, the type of case, any prejudice to the parties if testimony occurred by video conference, and any other issues of fairness." *Id*. Accordingly, a trial court "must balance" these and other relevant factors in an individual case. *Id.*

¶ 31　Although the Rules clearly give the trial court discretion in deciding whether to allow a witness to testify via remote means, such a decision cannot be made arbitrarily. Sinclair filed a declaration with the court explaining why it was impossible for him to be present in Chicago to give live testimony in the case. He explained that he was 79 years old and currently in the middle of a four-part medical treatment to combat severe arthritis in his knee. He declared that he could not endure travel from New Jersey to Chicago because it would be too physically painful and difficult. He further averred that he was approaching his 80th birthday and, as a result, did not feel comfortable traveling in the midst of a global pandemic, especially as the Omicron variant of Covid-19 was circulating. Finally, Sinclair declared that he was fully available and willing to testify remotely via Zoom or another remote video technology regarding his work at Wedco.

¶ 32　In our view, the trial court abused its discretion when, after it received Sinclair's declaration, it still denied him permission to testify remotely. Rule 241, as it was written at the time of the trial in this case, was intended to "more efficiently administer[] testimony for case participants who face an obstacle to appearing personally in court such as illness, disability, or distance from the courthouse." Ill. S. Ct. R 241, Committee Comments (West 2020) (eff. May 22, 2020). Sinclair checked all three boxes. The then-in-effect Rule 241 required "good cause" for a trial witness to testify via remote means. Ill. S. Ct. R. 241 (West 2020) (eff. May 22, 2020). Good cause, the Rules Committee explained at the time, "is likely to arise when a witness is unable to attend trial for unexpected reasons, such as accident, illness, or limited court operations, but also in foreseeable circumstances such as residing out of state." Ill. S. Ct. 241, Committee Comments (West 2020) (eff. May 22, 2020). The Committee "emphasized that remote appearances should be easy to request and liberally allowed." Ill. S. Ct. R. 45, Committee

Comments (Rev. Feb. 2, 2023). The circumstances strongly favored permitting Sinclair to testify via Zoom.

¶ 33    The Committee Comments for the 2020 version of the Rule also instruct that "[a] court should take into consideration and balance any due process concerns, the ability to question witnesses, hardships that would prevent the case participant from appearing in person, the type of case, any prejudice to the parties if testimony occurred by video conference, and any other issues of fairness."  Ill. S. Ct. R. 241, Committee Comments (West 2020) (eff. May 22, 2020). "A court must balance these and other relevant factors in an individual case." *Id*. In this individual case, the factors a trial court must consider when deciding to allow a witness to testify remotely strongly favored permitting Sinclair to testify via Zoom. Regarding the listed factors, all of them relatively support Sinclair being allowed to testify remotely. In particular, the hardships that prevented Sinclair from testifying were on the extreme end of support for the use of video conferencing. Additionally, it was clear defendants would not be prejudiced on the basis of whether Sinclair testified in person or on Zoom. Indeed, defendants have not pointed to any such prejudice and, in fact, never requested that Sinclair be required to appear in person. The condition was demanded only by the trial court. Five other witnesses testified via Zoom in this case without complication and without objection from the parties.

¶ 34    An abuse of discretion occurs when the trial court's decision is arbitrary or exceeds the bounds of reason. *Reyes v. Menard, Inc.*, 2012 IL App (1st) 112555, ¶ 14 (citing *Nationwide Mutual Insurance Co. v. Kogut*, 354 Ill. App. 3d 1, 4 (2004)). Here, we find the trial court's decision to deny Sinclair the opportunity to testify remotely constituted an abuse of discretion. However, even when we find an error in the exclusion of evidence, reversal of the judgment is not automatic. See *Redmon v. Austin*, 188 Ill. App. 3d 220, 226-27 (1989). Reversal due to an

improper evidentiary ruling is only warranted if prejudice resulted from the ruling or the result of the trial has been materially affected. *Id*. As previously discussed, Sinclair's testimony was crucial to plaintiffs' case and his effective exclusion as a witness at trial denied plaintiffs a full and fair opportunity to present their case to the jury. Sinclair's testimony was plaintiffs' only possible direct evidence of asbestos being used in Wedco's Elk Grove Facility. The jury clearly found something of interest in Sinclair's videotaped evidence deposition testimony as it was the only video the jury asked to be played again during deliberations. Sinclair reportedly had even more to offer at trial. The improper denial of Sinclair's request to testify via Zoom resulted in prejudice to plaintiffs and his testimony, if believed by the jury, had a reasonable chance of changing the outcome at trial. Therefore, plaintiffs are entitled to a new trial on remand.

¶ 35                         Exclusion of Deposition Testimony

¶ 36     One month before McNamara died, he gave a videotaped deposition in Iowa. The deposition was apparently conducted in accordance with the Iowa Rules of Civil Procedure. However, defendants were not provided notice about the deposition and were not present when it was conducted. Plaintiffs maintain that defendants were not provided notice of the deposition for the sole reason that defendants had not yet been identified as potential defendants. Five other potential defendants did, however, attend the deposition, and they questioned defendant about his work history, including his work connected to Wedco's Elk Grove facility.

¶ 37     Plaintiffs contend that they should have been permitted to admit McNamara's evidence deposition because he became an unavailable witness upon his death and because his deposition testimony meets the criteria for admission of testimony from an unavailable witness. Although neither party expressly stated the standard of review for this issue, a trial court's decision about whether to admit an evidence deposition at trial is reviewed for an abuse of discretion. *Grillo v.*

*Yeager Const.*, 387 Ill. App. 3d 577, 599 (2008). This standard generally applies to a trial judge's decision to allow or exclude evidence. *In re D.T.*, 212 Ill. 2d 347, 356 (2004). Because an evidentiary ruling typically requires the trial court to exercise discretion, *i.e.*, to "make a judgment call," it is appropriate to review the evidentiary ruling for an abuse of discretion. *People v. Chambers*, 2016 IL 117911, ¶ 75.

¶ 38     Illinois Rule of Evidence 804 and Illinois Supreme Court Rule 212 address the use of depositions and other out-of-court statements when the declarant is unavailable to testify at trial. Under Rule of Evidence 804, an evidence deposition may be used by any party for any purpose if the deponent is dead at the time of trial. Ill. R. Evid. 804(b)(1) (West 2020) (eff. Oct. 1, 2020). Rule 804 sets forth the requirements for admitting former testimony from a now-unavailable witness.

> "Testimony given as a witness (A) at another hearing of the same or a different proceeding, or in an evidence deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination, or (B) in a discovery deposition as provided for in Supreme Court Rule 212(a)(5)." Ill. R. Evid. 804(b)(1) (West 2020).

Rule 804 also discusses the issue at play here, whether a deposition from another jurisdiction can be used when the deponent is deceased at the time of trial.

> "A deposition taken in any action in another jurisdiction of the United States that involves the same subject matter and the same parties or their representatives or successors in interest as an action brought in this State may be used as if taken in

the action brought in this State. If the deposition was or would be admissible as substantive evidence at trial in the other jurisdiction, the deposition is deemed an evidence deposition. If not, the deposition is deemed a discovery deposition. By pretrial order, the court may require a party to give other parties reasonable notice of its intent to use a deposition taken in another jurisdiction." Ill. R. Evid. 804(e) (West 2020).

¶ 39    Here, the deposition was taken in another U.S. jurisdiction, Iowa. The deposition involves the same subject matter as the trial in this case. There is no dispute between the parties that the deposition taken in Iowa would be regarded as an evidence deposition in an Iowa court. The issue in this case with regard to McNamara's deposition comes down to whether the party against whom the testimony is now offered, defendants or defendants' predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. See Ill. R. Evid. 804(b)(1).

¶ 40    Defendants argue that McNamara's deposition was properly excluded from the trial because defendants were not provided notice of the deposition nor were they present at the deposition. Defendants contend that none of the parties present at McNamara's deposition had a similar motive to cross-examine McNamara in the way defendants would.

¶ 41    McNamara's deposition was held before any lawsuit was filed. Plaintiffs acknowledge that they had not even identified defendants as potential defendants at the time of the deposition. Plaintiffs themselves stated that the purpose of the pre-suit deposition was to "shed light on who the proper defendant was." Logically, every party at the deposition had the exact inverse motive defendants had. Each party at the deposition wanted to be *excluded* as a potential defendant. Had

defendants been present at the deposition, it too would have been figuratively battling with the other potential defendants to escape being named in the lawsuit.

¶ 42    During his deposition, McNamara specifically testified about his time driving to Wedco and waiting there for his truck to be loaded. McNamara testified that he spent up to four hours at Wedco's Elk Grove facility each time he visited, and he visited once per week for six months. Of course, no one at the deposition had a motive to cross-examine McNamara about those statements. The other parties at the deposition would have been happy to allow McNamara to talk about Wedco the whole time because his testimony was lessening the likelihood one of the parties present would be facing a suit. In the end, none of the parties who were present at McNamara's deposition were named as defendants. Meanwhile the absent party was the one named. The parties present at the deposition simply had no motive and nothing to gain from cross-examining McNamara about his activities or interactions with Wedco.

¶ 43    Defendant relies on our supreme court's decision in *People v. Rice*, 166 Ill. 2d 35, 41 (1995). In *Rice*, while addressing Federal Rule of Evidence 804, which is substantially similar to Illinois' version, the Court explained that, "[f]or an opportunity to cross-examine to be considered meaningful, and therefore adequate and effective, the motive and focus of the cross-examination at the time of the initial proceeding must be the same or similar to that which guides the cross-examination during the subsequent proceeding." Defendant also relies on *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1161 (4th Cir. 1986). In *Lohrmann*, the federal circuit court addressed an asbestos case in which the plaintiff sought to use deposition testimony from a deceased individual from a prior case where the defendant in the prior case was the same party as the defendant in the then-present case. *Id*. Even though the defendant was the same in both cases, the circuit court explained that the defendant had a different motive to develop the cross-

19

examination of the deceased deponent during the prior case as it would have had if the deceased deponent was being deposed in the then-present case. *Id.*

¶ 44     The Fourth Circuit explained why the deposition was properly excluded from evidence. "In the prior action there was a claim of the hazardous effects of raw asbestos upon the health of plant workers exposed to the raw asbestos in a manufacturing environment. In the present case, the plaintiff is not a plant worker, but a pipefitter, who from time to time worked in close proximity to insulators and others using products containing asbestos after it had been processed. The state of the art as it relates to the health of persons exposed to asbestos products differs considerably for asbestos plant workers dealing with raw asbestos and for persons working in the vicinity of asbestos products. The cross examination of Gaze did not develop this distinction because such distinction was not relevant to the Tyler, Texas, cases, and the district judge was correct in refusing to admit the deposition." *Id.*

¶ 45     We find the authority relied upon by defendants to be persuasive, and we find that the trial court did not abuse its discretion by excluding McNamara's deposition from being offered at trial. On remand, plaintiffs will not be permitted to use McNamara's testimony during a retrial.

¶ 46                                     Cumulative Error

¶ 47     Plaintiffs argue that the cumulative effect of errors made at trial deprived them of a fair trial. Plaintiffs raise issues such as the trial court's rulings with regard to certain expert testimony, experts being improperly asked hypothetical questions at trial, the court's exclusion of defendants' preliminary statement from its interrogatory answers, and the exclusion of a specific

affidavit. As we have already determined that plaintiffs are entitled to a new trial based on

Sinclair being effectively excluded as a witness, we do not address the issue of cumulative error.

¶ 48                                       CONCLUSION

¶ 49     Accordingly, we affirm in part, reverse in part, and we remand the case for a new trial.

¶ 50     Affirmed in part, reversed in part, remanded.