NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 240919-U

NO. 4-24-0919

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 10, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| KEITH EDWARD SPENCER, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Logan County |
| LINDA RAY, SARAH JANELLE SPENCER, and | ) | No. 22CH7 |
| ZACHARY NEAL SPENCER, | ) | |
| Defendants-Appellees. | ) | Honorable |
| | ) | William G. Workman, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices DeArmond and Vancil concurred in the judgment.

**ORDER**

¶ 1   *Held*: The appellate court reversed and remanded when plaintiff showed *prima facie* error based on the trial court's denial of his request to testify remotely. The record showed the court failed to consider the proper factors when it denied the request.

¶ 2       Plaintiff, Keith Edward Spencer, appeals the trial court's order allocating sales proceeds among himself and defendants, Linda Ray, Sarah Janelle Spencer, and Zachary Neal Spencer, following the sale of a residence in a partition action. On appeal, plaintiff contends the court erred in (1) denying his motion to allow him to provide remote testimony under Illinois Supreme Court Rule 241 (eff. Feb. 2, 2023), (2) refusing to accept his affidavit in lieu of testimony, and (3) allocating the sales proceeds, costs, and fees. Defendants have not filed briefs on appeal.

¶ 3       We determine plaintiff has shown *prima facie* error when the trial court denied his motion to testify remotely based on the court's personal preference for in-person testimony and

concerns about the possibility plaintiff's wife would be in the room with him. The record shows it would be impossible for plaintiff to testify in person due to his disabilities and residence in another state. Meanwhile, personal preference is not among the primary factors to be considered when deciding whether to allow remote testimony, and the court could apply safeguards to ensure plaintiff's testimony was not influenced by another person. Nothing indicates the court considered the proper factors of (1) any due process concerns, (2) the ability to question witnesses, (3) hardships that may prevent the witness from appearing in person, (4) the type of case, (5) any prejudice to the parties if testimony is to occur by video conference, and (6) any other issues of fairness. See *id.* Accordingly, we reverse and remand for a new evidentiary hearing.

¶ 4                                I. BACKGROUND

¶ 5         In November 2022, plaintiff filed a complaint seeking partition of a residence in Lincoln, Illinois. In January 2023, Linda also filed a complaint for partition of the property, and the trial court consolidated the cases. The record shows Linda is plaintiff's sister. Sarah and Zachary are plaintiff's niece and nephew from a deceased brother. Linda's mother, Judith Spencer, previously lived in the residence under a life estate.

¶ 6         On December 7, 2023, the trial court held a status hearing via Zoom with all parties present. The record on appeal does not contain transcripts of the hearings in the case. However, plaintiff's proposed bystander's report was approved by the court. Thus, facts concerning the hearings are taken from that report.

¶ 7         During the hearing, the parties informed the trial court a contract for sale had been entered, with a closing date set for December 29, 2023. The parties agreed the sales proceeds would be held in escrow pending either agreement by the parties as to distribution or further

order of the court directing distribution of the proceeds. The court set an evidentiary hearing on distribution of the proceeds for January 31, 2024, in the event the parties could not agree upon an equitable distribution. Plaintiff's counsel then inquired about the possibility of plaintiff appearing remotely at the hearing because plaintiff resided in Florida and had medical and physical conditions which made travel extremely difficult. The court stated its preference was any testimony at the evidentiary hearing be in person.

¶ 8       On January 29, 2024, plaintiff filed a written motion, seeking to be allowed to testify remotely at the evidentiary hearing. Plaintiff alleged the parties did not agree on distribution of the proceeds of the sale and it would be physically impossible for him to testify in person. In the alternative, plaintiff requested the trial court consider his affidavit in lieu of his testimony.

¶ 9       Plaintiff attached two affidavits to his motion. In the first, he averred he lived in Florida, was six feet and one inch in height, and weighed over 500 pounds. He was permanently disabled due to a severe injury, wheelchair bound, and unable to walk. He further averred cancer had affected his urinary functions, suffered from ventricular tachycardia, and was "a severe Type-2, needle dependent diabetic." Plaintiff required the assistance of his wife to take care of his basic needs and was unable to travel distances longer than approximately one hour. Thus, it was physically impossible for him to travel to Illinois.

¶ 10       In the second affidavit, offered in lieu of his testimony, plaintiff averred he and Linda were not on speaking terms. He averred the property was part of an estate that was passed via the Thomas Edward Hall Estate after several life estates had ceased. Linda was not an executor of that estate. He also averred Judith, as a person who previously had a life estate in the property, never owned the property. At the time of Judith's death, all personal property in the

- 3 -

residence became Linda's property per Judith's will.

¶ 11        Plaintiff averred he contacted Linda's attorney, Jacob Schlosser, in March 2022 about selling the property. Schlosser said Linda wished to purchase the property. Linda ordered an appraisal because she was planning to buy it, and the appraised value was determined to be $45,000. A proposal was made: if plaintiff committed to Linda purchasing the property, utility bills, taxes, and upkeep would be split three ways. A spreadsheet of expenses was presented, with no documentation to verify the amounts. Plaintiff asked Schlosser for (1) actual receipts and verification of payments for utility bills and upkeep, (2) a copy of the insurance policy for the residence, (3) Judith's death certificate, and (4) a key to the property for defendant, to be picked up by a local agent. After 45 days, on June 5, 2022, plaintiff sent Schlosser an e-mail, seeking an update. On June 7, 2022, Schlosser responded Linda no longer wished to purchase the property and had a third party in line to purchase it. Schlosser stated Linda would assume payment of all bills from the time of Judith's death to the time of the sale. A contract would not be written at that time, as they did not wish to proceed with the expense of creating one if they were not in agreement. Schlosser said Linda also would not produce a key because of safety concerns. On June 15, 2022, plaintiff e-mailed Schlosser, seeking further information and requesting a key. He averred Linda did not have his permission to store personal items in the residence, and he sought a reasonable rent for its use for storage.

¶ 12        Plaintiff averred he sent an e-mail on July 11, 2022, asking for an update. On July 20, 2022, Schlosser responded he was unable to reach Linda for further information. On August 8, 2022, Schlosser wrote he was leaving his current law firm but did not have a specific date, and he said a new attorney would be assigned to the case. On September 21, 2022, plaintiff contacted attorney Warren Benning about representation. After Benning was retained, plaintiff filed his

- 4 -

November 4, 2022, petition for partition. In March 2023, Benning left private practice, and plaintiff retained attorney David Hall.

¶ 13 In July 2023, plaintiff completed disclosure forms and signed a listing agreement with Diane Schriber as the selling agent for the sale of the residence, with an asking price of $65,000. Hall subsequently informed him Linda's new counsel, Michael Fleshman, objected to how plaintiff completed the disclosure forms because plaintiff had stated, based on personal knowledge, the porch of the house contained lead-based paint. Fleshman insisted the disclosures be changed and filed a petition for contempt for failing to execute the forms, even though plaintiff had been the first person to execute the documents.

¶ 14 Plaintiff averred he contacted Schriber on September 21, 2023, "to try to find out what was holding up the process." Schriber informed plaintiff she had not heard from anybody else since March 2022 and had not received disclosures or signed listing agreements from any other parties. Schriber also told plaintiff his disclosure form did not have to be identical to the disclosures of the others and would not prevent listing the home for sale. Hall also confirmed that representation was correct. Plaintiff included that information in his response to the contempt petition against him, which was filed on September 27, 2023. The disclosure and listing agreements were eventually signed by the other parties, dated after the date plaintiff signed his documents. The property sold shortly after for $58,000. Documents pertaining to the contempt petition do not appear in the record.

¶ 15 Plaintiff averred he believed the property could have been sold shortly after Judith's death if Linda had communicated and cooperated with him. He further believed it was necessary to file suit only because of the delays attributable to Linda's actions. Plaintiff had paid $8,232 in connection with the lawsuit, although a check for $592 had not been cashed by one of

the law firms. Plaintiff attached copies of numerous e-mails and billing statements supporting his claims.

¶ 16          On January 31, 2024, the trial court held the evidentiary hearing. Plaintiff's counsel appeared in person, and plaintiff viewed the proceedings over a video feed from his home in Florida. All other parties were present in person.

¶ 17          Regarding plaintiff's motion to provide remote testimony, Fleshman argued the motion should be denied because it was not timely, having been filed on January 29, 2024, and not being noticed in accordance with local rules. He also argued plaintiff's affidavit should not be considered by the trial court in allocating the sales proceeds because he could not cross-examine plaintiff regarding the contents of the affidavit.

¶ 18          Hall argued it was not possible to file the motion earlier, as it had only recently become apparent the parties could not agree on a distribution and a hearing would be necessary on the issue. He also argued a formal motion to allow remote testimony was not necessary because Rule 241 required only a "request" and allowed remote testimony on the trial court's own order. Hall also argued it was proper to consider an affidavit at an evidentiary hearing and, if the court would not allow plaintiff to testify remotely, it should consider his evidentiary affidavit and exhibits when it allocated the proceeds of the sale and considered fees and costs.

¶ 19          The trial court ruled plaintiff would not be allowed to testify remotely and it would not consider plaintiff's evidentiary affidavit in determining the allocation of the sales proceeds. Nothing indicates the court provided its reasons for the denial of the motion at that time.

¶ 20          Linda was the only witness to testify at the hearing. Linda testified as to costs she incurred for utilities for the property, mowing, an appraisal, and insurance on the property.

Exhibits were introduced, including (1) a group exhibit of e-mail correspondence between the attorneys for the parties; (2) statements pertaining to attorney fees sought to be awarded to Linda; (3) a letter directing the title company to pay the sales proceeds to the firm of Woods & Bates, to be held in escrow; (4) closing documents showing the sales proceeds; (5) a group exhibit with listings by category of amounts Linda claimed to have expended for the property, along with receipts and billing statements; and (6) the proposed distribution of the sales proceeds sought by Linda.

¶ 21 Linda testified the expenditures were necessary to preserve the property and asked to be reimbursed for each expenditure from the sales proceeds. She testified she retained the law firm of Woods & Bates to represent her in June 2022. On cross-examination, Linda testified Judith had lived in the residence under a life estate until her death in December 2021 and Linda was the sole beneficiary of Judith's estate. Linda testified personal property that had belonged to Judith was stored in the residence for several months. She also testified her husband had stayed there for approximately a week in June 2022 while their home was being renovated due to health concerns about dust. Linda was the only named insured on the insurance policies she obtained on the property and for which she sought reimbursement.

¶ 22 Linda identified plaintiff's signed contract and disclosure forms, and they were admitted into evidence. She also identified the disclosure forms signed by herself, Zachary, and Sarah, which were admitted into evidence. Linda testified plaintiff's disclosures were dated July 27, 2023, and the disclosures signed by the other parties were dated August 14, 2023. Linda admitted those documents were not forwarded to Schriber until November 25, 2023. She said they were not forwarded sooner because another realtor had told her the property could not be listed unless the disclosures by all the parties were identical, and plaintiff had disclosed the

presence of lead paint on the porch of the house the other parties did not disclose. Linda testified, shortly after Schriber listed the property in November 2023, an offer was received and accepted, and the sale closed in December 2023. The property was listed with the disclosures that had been signed by plaintiff in July and the other parties in August without any changes.

¶ 23 Zachary and Sarah both declined to provide testimony. Linda sought an award for costs and attorney fees as shown on the exhibits introduced. Plaintiff asked the trial court to charge solely to Linda expenses for utilities and maintaining the property through at least July 2022, costs of the appraisal which Linda obtained for her own purposes, and insurance costs because the other parties would not have benefited from the insurance in the event of a loss.

¶ 24 Hall argued the evidence indicated plaintiff was the party who had tried to get the property sold without litigation and Linda had delayed the process so she could utilize the property for her own purposes for a period of time. He also argued the disclosures signed by the parties and introduced as exhibits established plaintiff had signed the disclosures before the other parties and any claim plaintiff was delaying matters was completely untrue. Hall further argued it was proper and required by statute for plaintiff to truthfully complete the disclosure forms. While it was possible a realtor had told Linda the disclosures had to be identical in order to list the property, that was erroneous legal advice by the realtor, and any delay caused by following that advice was the fault of the realtor and Linda instead of plaintiff.

¶ 25 The trial court announced its ruling from the bench, awarding Linda all the costs and attorney fees as requested and directing her attorney to prepare a written order. A written order was entered on February 5, 2024, allocating the proceeds of the sale. It did not charge expenses or costs of utilities to Linda. The order did not include any of the court's reasons for the denial of plaintiff's motion to provide remote testimony, the allocation of the proceeds, or its

award of costs and fees to Linda.

¶ 26　　　　Plaintiff filed a motion to reconsider, arguing the trial court erred in (1) denying his motion to allow him to provide remote testimony under Rule 241, (2) refusing to accept his affidavit in lieu of testimony, and (3) allocating the proceeds, costs, and fees. Plaintiff also argued there was a mathematical error in the fee award. Additionally, plaintiff sought a written order explaining the court's reasoning.

¶ 27　　　　Linda filed a response, arguing in part the motion was untimely "pursuant to statute or local rules," without providing citations. Linda also argued the matter was not properly noticed for a hearing.

¶ 28　　　　On May 14, 2024, the trial court held a hearing on the motion. Hall argued plaintiff's affidavit and attached exhibits established errors in the court's allocation of the proceeds and showed plaintiff should have been awarded attorney fees. Fleshman argued it would be unfair to allow plaintiff to testify remotely or by affidavit. He argued if the motion to allow remote testimony had been brought sooner, a video evidence deposition of plaintiff could have been taken, during which plaintiff could have been cross-examined.

¶ 29　　　　The trial court denied the motions. In a written order, the court stated:

> "The court has consistently stated a preference for in-person testimony. It is easier to observe the demeanor and expressions of the witness testifying. It is more convenient, particularly with respect to questioning on exhibits and documents, if the individual testifying is present in open court. I also observed [plaintiff] communicating with somebody else in the room with him, but out of the video frame, during each of the hearings he has observed via a Zoom link. While it is understood that [plaintiff] was in a room with his wife, and was only

observing the proceedings and not testifying, the possibility of the witness communicating with someone during their testimony is of great concern to this court.

For these reasons, the request for reconsideration of the denial of the request for [plaintiff] to be allowed to testify remotely is denied. I find that good cause to allow [plaintiff] to testify remotely pursuant to Rule 241 has not been shown. Since the request to allow remote testimony is denied, the request for rehearing or retrial is also denied."

The court denied the request to consider plaintiff's affidavit because Linda would not be able to cross-examine him. The court also found it would not recalculate the allocation of the proceeds, costs, and fees.

¶ 30 This appeal followed.

¶ 31 II. ANALYSIS

¶ 32 On appeal, plaintiff argues the trial court erred (1) by denying his motion to allow him to provide remote testimony under Rule 241, (2) by refusing to accept his affidavit in lieu of testimony, and (3) in its allocating the proceeds, costs, and fees.

¶ 33 We begin by noting defendants did not file briefs on appeal. A reviewing court may exercise three discretionary options in the absence of an appellee's brief:

"(1) it may serve as an advocate for the appellee and decide the case when the court determines justice so requires, (2) it may decide the merits of the case if the record is simple and the issues can be easily decided without the aid of the appellee's brief, or (3) it may reverse the trial court when the appellant's brief demonstrates *prima facie* reversible error that is supported by the record." *Thomas*

*v. Koe*, 395 Ill. App. 3d 570, 577 (2009) (citing *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976)).

"*Prima facie*" means "[a]t first sight; on first appearance but subject to further evidence or information" and "[s]ufficient to establish a fact or raise a presumption unless disproved or rebutted." (Internal quotation marks omitted.) *Id.*

¶ 34    We determine plaintiff has shown *prima facie* reversible error based on the trial court's denial of his motion to provide remote testimony. Rule 241 addresses remote testimony and provides:

"(a) Applicability. This Rule applies to civil trials and evidentiary hearings that require case participants to obtain approval to appear remotely, including by telephone or video conference, under [Illinois Supreme Court] Rule 45(c)(1)(i), (iii), and (iv) [(eff. Jan. 1, 2023)].

(b) Testimonial Participation. The judge presiding over a matter may, upon request or the judge's own order, allow a case participant to testify by video conference for good cause shown and upon appropriate safeguards. Where the judge presiding over a matter or the testifying case participant does not have video conference services available, the judge may consider the presentation of testimony by telephone or other audio means in compelling circumstances for good cause shown and upon appropriate safeguards.

(c) Nontestimonial Participation. The judge presiding over a matter may, upon request or the judge's own order, allow a case participant who is not testifying to participate by telephone or video conference for good cause shown and upon appropriate safeguards.

(d) Costs. The judge may further direct which party shall pay the cost, if any, associated with the remote conference and shall take any action necessary to ensure that the cost of remote participation is not a barrier to access to the courts." Ill. S. Ct. R. 241 (eff. Feb. 2, 2023).

¶ 35 Under the Committee Comments to Rule 241, "any procedure or process for requesting approval to participate remotely shall be easy." Ill. S. Ct. R. 241, Committee Comments (rev. Feb. 2, 2023).

¶ 36 The Committee Comments also provide policy reasons for the rule, stating:

"The use of video conference technology to conduct civil trials and evidentiary hearings increases accessibility to the courts, aids in the efficient administration of justice, avoids delays in trials, and more efficiently administers testimony for case participants who face an obstacle to appearing in person in court such as illness, disability, or distance from the courthouse. Accordingly, remote testimony in civil trials and evidentiary hearings must be given the same consideration as testimony presented physically in the courtroom or evidence deposition." *Id.*

¶ 37 The Committee Comments explain "good cause" must be shown because of the "utmost importance" of live, in-person testimony. *Id.* Good cause is likely to arise when a witness is unable to attend the trial for unexpected reasons, such as an accident, an illness, or limited court operations, but also in foreseeable circumstances, such as residing out of state or having a disability that prevents an in-person appearance. *Id.* When allowing remote testimony, the trial court must impose adequate safeguards to ensure accurate identification of the participant and to avoid improper influences by any individual who may be present with the

participant during their testimony. *Id.*

¶ 38       When deciding whether to allow remote testimony, the trial court must balance all relevant considerations, including (1) any due process concerns, (2) the ability to question witnesses, (3) hardships that may prevent the witness from appearing in person, (4) the type of case, (5) any prejudice to the parties if testimony is to occur by video conference, and (6) any other issues of fairness. *In re H.B.*, 2022 IL App (2d) 210404, ¶ 70 (citing Ill. S. Ct. R. 241, Committee Comments (rev. May 22, 2020)). Although the comments add the court has "broad discretion" to make this determination, the comments also state the court "should" nonetheless "take into consideration and balance any due process concerns" when deciding whether to allow remote testimony and then states the court "must balance these and other relevant factors." Ill. S. Ct. R. 241, Committee Comments (rev. Feb. 2, 2023).

¶ 39       The Committee Comments to Rule 241 further address "appropriate safeguards" as follows:

> "[A]dequate safeguards are necessary to ensure accurate identification of the case
> participant testifying remotely and to avoid improper influences by any individual
> who may be present with the case participant at the time of the testimony. Where
> a case participant testifies from a remote location and no neutral representative or
> representative of an adverse party is present in the room with the testifying case
> participant, care must be taken to ensure the integrity of the examination. The
> testifying case participant may be examined by the court or counsel for any party
> regarding the identity of all persons in the room during the testimony. Where
> possible, all persons in the room during the testimony should separately
> participate in the videoconference. In furtherance of their obligations under

- 13 -

Illinois Rules of Professional Conduct 3.3 [(eff. Jan. 1, 2010)] (Candor Toward the Tribunal), 3.4 [(eff. Jan. 1, 2010)] (Fairness to Opposing Party and Counsel), and 8.4(d) [(eff. Jan. 1, 2023)](Misconduct), counsel representing a case participant should instruct the case participant that (a) he or she may not communicate with anyone during the examination other than the examining attorney or the court reporter and (b) he or she may not consult any written, printed, or electronic information during the examination other than information provided by the examining attorney. Unrepresented case participants may be similarly instructed by the court." *Id.*

¶ 40 We review the trial court's denial of a motion to allow remote testimony for an abuse of discretion. *McNamara v. ICO Polymers North America, Inc.*, 2023 IL App (1st) 220634-U, ¶ 21. The court does not necessarily have to state the factors it considered in making a good cause determination or make a specific finding of good cause on the record. *In re Harley S*., 2022 IL App (5th) 210342-U, ¶ 69. However, the court's determination cannot be arbitrary. *McNamara*, 2023 IL App (1st) 220634-U, ¶ 31.

¶ 41 "A trial court abuses its discretion when it makes an arbitrary decision or fails to use 'conscientious judgment' in reaching its ultimate determination." *Madalinski v. St. Alexius Medical Center*, 369 Ill. App. 3d 547, 557 (2006). "When a court is required by law to exercise its discretion, the failure to do so may itself constitute an abuse of discretion, precluding deferential consideration on appeal." *Seymour v. Collins*, 2015 IL 118432, ¶ 50. If the record reveals the court has failed to exercise the discretion entrusted to it, the reason for deference by an appellate court disappears. *Id.* (citing *Arizona v. Washington*, 434 U.S. 497, 510 n.28 (1978)).

¶ 42 Here, the record shows the first time plaintiff orally asked to appear remotely, the

trial court stated it preferred in-person testimony, with no discussion of Rule 241 or good cause. Then, nothing indicates the court addressed Rule 241 or good cause at the time it denied the written motion. Instead, plaintiff asked in his motion to reconsider for the court to enter a written order explaining its reasoning.

¶ 43　　　　In the order denying plaintiff's motion to reconsider, the trial court determined good cause had not been shown because (1) the court preferred in-person testimony because it was more convenient and easier to observe the witnesses and (2) the court was concerned about another person being in the room with plaintiff during past appearances where plaintiff observed the proceedings via video. However, neither of these are among the factors a court "should" or "must" consider when addressing whether to allow remote testimony under Rule 241. Ill. S. Ct. R. 241, Committee Comments (rev. Feb. 2, 2023).

¶ 44　　　　The Committee Comments show Rule 241 already encompasses the trial court's first concern by noting the importance of in-person testimony for the reasons the court stated but then nevertheless directs the court to address factors pertaining to good cause to determine whether to allow remote testimony. Then, the rule directs the court to provide safeguards to address the court's second concern regarding people in the room with the witness. Thus, each of the factors considered by the court was already encompassed by other considerations associated with Rule 241. Personal preference is not among the primary factors to be considered when deciding whether to allow remote testimony, nor is the hypothetical possibility of others being in the room with a testifying witness. Additionally, the court and plaintiff's counsel could easily apply safeguards to ensure plaintiff's testimony was not influenced by another person. The Committee Comments clearly contemplated such safeguards.

¶ 45　　　　While we recognize the trial court is not required to list everything it considered,

nothing indicates the court considered anything else or balanced the relevant considerations at all. The Committee Comments note the court "should" or "must" consider (1) any due process concerns, (2) the ability to question witnesses, (3) hardships that may prevent the witness from appearing in person, (4) the type of case, (5) any prejudice to the parties if testimony is to occur by video conference, and (6) any other issues of fairness. *Id.* Those factors all heavily favored plaintiff's request.

¶ 46    The record is clear plaintiff was physically incapable of providing in-person testimony due to a significant disability and his residence in Florida. The denial of plaintiff's request also raised substantial due process and fairness concerns and caused significant prejudice to his case. Plaintiff's affidavit established valid reasons to deny Linda's request for costs and fees and called into question some of the use of the property and maintenance expenses. However, plaintiff was precluded from providing that evidence. Thus, the effect of the denial was plaintiff could not present his case at all, which, based on the material in his affidavit, resulted in a possibly erroneous allocation of proceeds and a questionable award of attorney fees. Meanwhile, nothing indicates the ability to question plaintiff would have been affected by the use of remote testimony, and the trial court and plaintiff's counsel could have easily addressed concerns about the presence of plaintiff's wife by requiring her to separately attend via video and through admonitions as contemplated by the Committee Comments to Rule 241.

¶ 47    We note Linda's counsel argued it would be unfair to allow plaintiff to testify remotely and that the motion was untimely or not properly noticed for a hearing. However, Rule 241 does not require a formal motion or address the timing of a motion. Instead, the Committee Comments note, "[A]ny procedure or process for requesting approval to participate remotely shall be easy." *Id.*

¶ 48    The trial court heard plaintiff's motion in conjunction with the already scheduled evidentiary hearing. Plaintiff was present via video for the hearing, and nothing indicates he was unable to testify remotely at that time or Linda's counsel would be unable to cross-examine him if he were allowed to provide remote testimony. Nothing indicates appropriate safeguards could not have been employed to ensure plaintiff's testimony was not influenced by anyone else.

¶ 49    Because the record indicates the trial court did not exercise its discretion in accordance with Rule 241 when it denied the motion, we find plaintiff has shown *prima facie* reversible error. Accordingly, we reverse and remand for a new evidentiary hearing. We note the issue of remote testimony is likely to recur on remand. While it is perhaps theoretically possible the court could properly consider the relevant factors and find no good cause for plaintiff to testify remotely, as previously discussed, the factors on the record before us clearly favored allowing remote testimony. Nothing indicates plaintiff did not show good cause.

¶ 50    Because we reverse and remand for a new evidentiary hearing based on the trial court's refusal to allow remote testimony, we do not address defendant's alternate argument the court should have allowed his affidavit in lieu of testimony. We also do not address the court's allocation of the proceeds of the sale and award of fees and costs.

¶ 51                                III. CONCLUSION

¶ 52    For the reasons stated, the judgment of the trial court is reversed and the cause remanded for a new evidentiary hearing.

¶ 53    Reversed and remanded.